Filed
D.C. Superior Court
03/06/2019 23:36PM
Clerk of the Court



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

*Kevin Fahey et al*

_____
                                                    Plaintiff

                                                                    Case Number |_____

Reily Foods Company
400 Poydras Street                          )
New Orleans LA  70130                       _____
                                            fendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Thomas C. Willcox*
_____                 *Clerk of the Court*
Name of Plaintiff's Attorney

*1701 16th Street, N.W., Suite 211*
_____                 By _____
Address                                                        Deputy Clerk
*Washington DC  20009*
_____

*202.338.0818*                                  Date _____
_____
Telephone

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요     የትርጉም አገልግሎት ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for s

**EXHIBIT**
**A**

See reverse side for Spanish translation
Vea al dorso la traducción al español



**Superior Court of the District of Columbia**
CIVIL DIVISION
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

*Kevin Fahey et al*
_____
                                                    Plaintiff

                                                                    Case Number |_____

New England Coffee Company
100 Charles Street
Malden MA  02148                              )
                                              _____
                                                    fendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Thomas C. Willcox*
_____
Name of Plaintiff's Attorney

*1701 16th Street, N.W., Suite 211*
_____
Address

*Washington DC  20009*
_____

*202.338.0818*
_____
Telephone

*Clerk of the Court*

By _____
                        Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요      የአማርኛ ተናጋሪ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | | |
|---|---|---|
| A. Kevin Fahey<br>5301 Birds View Lane, Unit D<br>Alexandria, VA | )<br>)<br>) | |
| on behalf of the General Public of the<br>District of Columbia | )<br>) | Civil Action No:  **2019 CA 001465 B** |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| New England Coffee Company<br>100 Charles Street<br>Malden MA   02148-6773 | )<br>)<br>) | Jury Trial Demanded |
| Reily Foods Company<br>400 Poydras Street<br>New Orleans, LA 70130 | ) | |
| Defendants | | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kevin Fahey ("Plaintiff"), by and through his counsel, brings this action against the

New England Coffee Company and Reily Foods Company (collectively the "Defendants") on behalf of

the General Public of the District of Columbia, and alleges the following based upon information,

belief and the investigation of counsel:

## **NATURE OF THE CASE**

1. This is a representative action brought on behalf of Plaintiff and a class of consumers who

    purchased certain coffees ("Coffees" or collectively the "Product" or the "Products") within the

1

District of Columbia, of the defendant.  Plaintiff purchased Defendants' Hazelnut Crème

Coffee.  The front of the package prominently described the coffee as Hazelnut Cream and

indicated only that it was a medium blend with a rich nutty flavor leaving the Plaintiff and

fellow consumers to reasonably believe that the coffee contained enough of its characterizing

ingredient (i.e. hazelnut) to provide it with the promised flavor.  In truth, however, the Hazelnut

Crème Coffee contains none of its characterizing ingredient, and instead is both artificially and

naturally flavored.

2. By law, any food which is expected to contain its characterizing ingredient, but does not, and

instead is flavored, must make that disclosure to consumers on the front of its packaging.

Failure to do so misleads reasonable consumers into believing they are purchasing an item with

qualities it does not have, and is in clear violation of the law.

3. Such violation is not just a technical violation of federal, and therefore, state, law.  The federal

law requiring such disclosure means that consumers nationwide will see the words to the effect

"artificially flavored" on the front of any such product.  They will therefore assume that the

absence of such labeling means the product contains no artificial flavors and look no further (ie,

not inspect the back panel for fine print indicating to the contrary).

4. Plaintiffs and each of the Class Members accordingly suffered an injury in fact caused by the

false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek

compensatory damages and other relief.

5. The Plaintiff and Class Members seeks to enjoin such fraud, obtain disgorgement of profits

from sales of the products in question and obtain appropriate monetary damages for the

consumers who purchased such products in the District of Columbia.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action, and venue is appropriate in this Court, pursuant to D.C. Code §§ 11-921 and 28-3905(k)(1).

9. This Court has personal jurisdiction over the Defendants pursuant to D.C. Code §13-423, as Defendants sells their products at stores throughout Washington, D.C.

10.    In addition, a substantial part of the actions which gave rise to Class Members' cause of action occurred in this jurisdiction.

## THE PARTIES

11.    Plaintiff Keven Fahey is a resident of Virginia.

12.    Defendant Reily Foods Company is a conglomerate broadly specializing in the sale of food and beverages. It was started over 100 years ago as a company dedicated to the roasting, grinding, packaging and distribution of canned coffee. While it has added a variety of food and beverage products to its portfolio, Reily has maintained a significant position in the manufacture and sale of coffee. In 2009 it acquired the New England Coffee Company whose flavored coffees are the subject of this litigation.  Reily sells its products nationally and is headquartered in New Orleans, Louisiana.

13.    Defendant New England Coffee Company ("NECC") maintains its principal place of business at 100 Charles Street, Malden, MA 02148-6773, from where it manages and directs its nationwide sales and business operations

3

## LEGAL FRAMEWORK - THE INTERESTS OF THE CLASS MEMBERS AND THE GENERAL PUBLIC AND THE DC CONSUMER PROTECTION ACT

14.     The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §

28-3901 *et seq.,* prohibits unlawful trade practices.  The prohibited trade practices include, in

relevant part, actions that

(a)   represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have
 (b). represent that goods have characteristics, uses, or benefits that they do not have;
  (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another
(e) misrepresent as to a material fact which has a tendency to mislead;
(f) fail to state a material fact if such failure tends to mislead;
(f-1), use innuendo or ambiguity as to a material fact, which has a tendency to mislead
(h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; and
(x) to sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Code, Official Code, or by operation or requirement of federal law.

Section 3904.

15.     Additionally, "the CPPA's extensive enforcement mechanisms apply not only to the

unlawful trade practices proscribed by § 3904, but [also] to all other statutory and common law

prohibitions." *Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 325-26 (D.C. 1999).

16.     The CPPA allows for treble damages, or $1500 per violation, whichever is greater, as

well as reasonable attorneys' fees, punitive damages, an injunction against the unlawful trade

practice, "additional relief as may be necessary to restore the consumer money or property . . .

which may have been acquired by means of the unlawful trade practice," and "any other relief

the court deems proper."  D.C. Code § 28-3905(k)(1).

17.     Plaintiff brings this action on behalf of himself and as a Representative Class Members acting for the interests of the general public of the District of Columbia, seeking relief from Defendant's use of trade practices in violation of laws of the District of Columbia, pursuant to D.C. Code § 28-3905(k)(1).

18.     Coffee is a "consumer good", and the Defendants are each a "merchant" within the meaning of the CPPA.  D.C. Code § 28-3901(1)(2) and (7).

**THE FAHEY PURCHASE**

19.   On June 16th 2018, Mr. Fahey purchased a package of New England Coffee Hazelnut crème at the Giant Grocery on 3336 Wisconsin Avenue, in Washington DC.   A copy of the receipt is set forth below as Figure A, and 4 photos of the packaging are set forth below as Figures B, C and D respectively.

20.   The photographs set forth below demonstrate that Mr. Fahey purchased a product that fails to make the disclosure at issue herein, as required by federal and state law.

21.     Under the CPPA, such a purchase is all that is necessary to give Mr. Fahey standing to be the Class Representative in this action. D.C.Code § 28-3905(k) (2001) now specifies:

(k)(1) A person, whether acting for the interests of itself, its members, or the general public, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or obtain the following remedies:

(A) treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;
(B) reasonable attorney's fees;
(C) punitive damages;
(D) an injunction against the use of the unlawful trade practice;
(E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or

5

(F) any other relief which the court deems proper.

22.   The basis for Mr. Fahey's standing and the manifestation of his alleged injury in fact is similar to that in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982). There, the Court determined that § 804(d) of the Fair Housing Act"established an enforceable right to truthful information concerning the availability of housing," id. at 373, 102 S.Ct. 1114, and thus, plaintiffs were injured in fact and had standing to sue because of "deprivation of information about housing availability,"

23.   In *Grayson v. AT & T CORP.*, 15 A. 3d 219 (DC 2011), the DC Court of Appeals, invoking the *Havens* ruling, upheld the standing of a purchaser of prepaid telephone calling card to sue for alleged violations of the CPPA. Consistent with *Havens*, the Supreme Court ruled as such even though the plaintiff was an industry insider who knew when he purchased the product that it had the defects at issue. *Grayson* at 249-252.

24.   Further, the DC City Council has suspended funding of enforcement by the DC Attorney General's Office of the CPPPA. *Grayson, supra*, at 240.

25.   Therefore, the liberal standing requirements conferred by *Grayson* on private plaintiffs are consistent with the intent of the DC City Council "provide public interest organizations and private attorneys the ability to seek injunctive relief and disgorgement of ill-gotten gains in the public interest". *Id* at 240.

6

*Figure A*



*Figure B*



*Figure C*



*Figure D*



## FACTUAL ALLEGATIONS.

26.     Consumers, including Plaintiff and putative Class Members, reasonably rely on product

labeling to inform their purchasing decisions. Inaccurate labeling results in consumer deception

and gives rise to the allegations set forth herein.

27.     District of Columbia consumers, like American consumers nationwide, seek out natural

food products and are willing to pay significantly more for such products when compared to

food products with artificial ingredients.[1] This is based in no small part on the perception (valid

or otherwise) that natural ingredients, such as flavors, are more healthy than artificial flavors.[2]

28.      Products that contain only natural ingredients thus command a price premium, or are

more likely to be purchased than, compared to similar products that contain synthetic

ingredients such as artificial flavors.

29.      To appeal to consumers who seek out natural food products and are willing to pay more

for them, Defendants, at least through December 2018, labeled and advertised the Products as if

they were exclusively naturally-flavored.

30.      Thus, during the Class Period, as defined in detail *infra*, Defendants labeled, marketed,

advertised and sold NECC Hazelnut Crème Coffee and other flavored coffees in the District of

Columbia.

31.      The front of the Product package described the contents as "100% Arabica Coffee," a

"Medium Blend," with "Rich Nutty Flavor."  The Product was prominently characterized as

"Hazelnut Crème."

---

[1] "Consumers Want Healthy Foods - And Will Pay More For Them"; Forbes Magazine, February 15, 2015.
https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers- want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; (last visited December 4th  2018).
[2] See., e.g., https://www.organics.org/natural-vs-artificial-flavors/ (last visited March 6 2018).

11



32.     Nowhere on the front of the package was there any indication that the Product was

entirely devoid of its characterizing ingredient. Rather, buried on the back side of the label in

the far-left corner in tiny print was the only indication that the Product did not contain its

characterizing ingredient, but rather was flavored:"Ingredients: 100% Arabica Coffee Naturally

and Artificially Flavored." (emphasis added).



LABELING REQUIREMENTS

33.     The federal Food, Drug & Cosmetics Act ("FDCA") is a comprehensive federal

consumer protection law that broadly, but non-exclusively, regulates the sale of food to the

consuming public.  21 U.S.C §301.  The term food broadly means "articles used for food or

drink for man…" and coffee beans, and any derivative thereof, are considered food under the

FDCA. 21 USC §321(f).

34.     "Congress passed the Food, Drug, and Cosmetic Act to ensure that food and beverage

manufacturers do not mislead or deceive consumers with their advertising. The FDCA's

purpose is to protect consumers from adulterated and misbranded food and beverages. The

FDCA prohibited misbranding food and beverages using false or misleading labels to further

this goal." The Crusade Against Misleading Labels: Are Manufacturers the Protectors of

Consumer Interests?, Pezzullo, Andrea M., Suffolk University Law Review; 2016, Vol. 49 Issue

2, p323-342.

35.     The FDCA prohibits the misbranding of any food. 21 U.S.C. §331(b).

36.     Generally, a food is "misbranded" if, among other things, its labeling is false or

misleading." 21 U.S.C. § 343. 21 C.F.R. §101.22 specifically provides:

> (i)     If the label, labeling, or advertising of a food makes any direct or
> indirect representations with respect to the primary recognizable flavor(s),
> by word, vignette, e.g., depiction of a fruit, or other means, or if for any
> other reason the manufacturer or distributor of a food wishes to designate
> the type of flavor in the food other than through the statement of
> ingredients, such flavor shall be considered the characterizing flavor and
> shall be declared in the following way:
>
> (1)(i) If the food is one that is commonly expected to contain a
> characterizing food ingredient, e.g., strawberries in "strawberry
> shortcake", and the food contains natural flavor derived from such
> ingredient and an amount of characterizing ingredient insufficient to
> independently characterize the food, or the food contains no such

13

ingredient, the name of the characterizing flavor may be immediately
preceded by the word "natural" and shall be immediately followed by the
word "flavored" in letters not less than one-half the height of the letters in
the name of the characterizing flavor, e.g., "natural strawberry flavored
shortcake," or "strawberry flavored shortcake."

(1)(ii) If none of the natural flavor used in the food is derived from the
product whose flavor is simulated, the food in which the flavor is used
shall be labeled either with the flavor of the product from which the flavor
is derived or as "artificially flavored."

(2) If the food contains any artificial flavor which simulates, resembles or
reinforces the characterizing flavor, the name of the food on the principal
display panel or panels of the label shall be accompanied by the common
or usual name(s) of the characterizing flavor, in letters not less than one-
half the height of the letters used in the name of the food and the name of
the characterizing flavor shall be accompanied by the word(s) "artificial"
or "artificially flavored", in letters not less than one-half the height of the
letters in the name of the characterizing flavor, e.g., "artificial vanilla",
"artificially flavored strawberry", or "grape artificially flavored".

37.     The Coffee sold by Defendants is characterized as Hazelnut Crème. It did not contain
hazelnut, but rather, is flavored with natural and artificial flavoring. By law, therefore,
Defendants must disclose the fact that the Product is flavored on the front of the Product's
packaging. Defendants have failed to make such a disclosure and therefore are in violation of
the law. 21 C.F.R. §101.22.

38.     Properly indicating that a coffee is flavored is not only a legal requirement, but it is a
material term on which a reasonable consumer would rely. In fact, the requirement itself
creates a national standard of care that, when deviated from, deceives the consumer.

39.     As shown in more detail below, Defendants numerous marketplace competitors, each
of whom market similarly flavored products, but instead have chosen to label them in a manner
that promotes consumer understanding and is consistent with their obligations under the law.
See, *infra.-*

14

Illustration No. 1      Illustration No. 2

 

40.      The contrast is further illustrated by the labeling of French Market Coffee, a brand owned by the American Coffee Company, a subdivision of Defendant Reily Foods.

41.      Like NECC, the coffee is composed of Arabica beans, Natural and Artificial Flavors. Unlike NECC, however, it clearly discloses on the front of the package, as it is obligated to, that the product is flavored.

15



42.     The coup de grace on this issue is the fact that the defendants have, since December

2018, when the undersigned sent a pre complaint demand letter to them, changed the labeling of

the product at issue. Touting a "brand new look", the new packaging discloses on the front

panel that it apparently contains only artificial flavors (such can be inferred by the complete

absence of any reference to the existence of natural flavoring at the same location):



43.     Note that the requirement in question applies not only to coffee products, but <u>any</u> product containing artificial flavoring.

44.     Such a national standard means that consumers will see the disclosure of artificial flavoring <u>on the front panel</u> of many products and (presumably, if they are reasonable) assume that the product contains artificial flavoring.

45.     Further, said reasonable consumers will reach the opposite conclusion when they see a product that does <u>not</u> contain any disclosure <u>on the front panel</u> of the existence of artificial flavoring within.

46.     These consumers will reasonably conclude, in reliance on the absence of such disclosure, that the product <u>does not</u> contain any artificial flavoring.

47.     In short, reasonable consumers, who will pay a premium for natural flavoring, pay such a premium when they purchase products such as NE Coffee's Hazelnut Crème.

48.     A proper price comparison is difficult to make at this point for, as noted above, NE

Coffee has ceased to claim it puts <u>any</u> natural flavoring in its Hazelnut crème coffee.

49.     It is possible NE Coffee charged, and DC consumers have paid, such a premium, having been deceived into believing NE Coffee products such as Hazelnut Crème do not contain artificial flavoring.   The Defendants would have been paid this premium by the deceptive practice described herein.

50.     Alternatively, even if the products were priced comparably, DC consumers were more likely to have purchased the fraudulently labeled NE Coffee over similar products properly disclosing the use of artificial flavors, increasing NE Coffee sales and therefore profits.

**Class Allegations**

51.     This action has been brought and may be maintained as a class action pursuant to Superior Court Rule of Civil Procedure 23 because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiff is unaware of any difficulties likely to be encountered in managing this case as a class action.

52.     **Relevant Time Period:** The relevant time period is defined as the time period beginning three years prior to the filing of this action until judgement is entered.

53.     **Class Definition** All persons who reside in the District of Columbia. currently or formerly and who purchased the Products in the District of Columbia during the relevant time period.

54.     Excluded from the class are:(1) the Defendants, their subsidiaries, and their legal representatives, officers, directors, assigns and successors; and (2) all state and/or federal court judges who may preside over this case, their staff, and their immediate family members.

18

55.   Numerosity:   The class members are so numerous that the individuals joinder of each individual class member is impractical. While Plaintiff does not currently know the exact number of class members, Plaintiff is informed and believes, and thereupon alleges that the actual number exceeds the minimum required for numerosity under DC law.

56.   Commonality and Predominance:  Common questions of law and fact exist as to all class members and predominate over any questions which affect only individual class members.

57.   These common questions include, but are not limited to:

(a) Whether Defendants contributed to, committed, or are responsible for the conduct alleged herein;

(b) Whether Defendants' conduct constitutes the violations of law alleged herein;

(c) Whether Defendants' acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

(d). Whether Class Members are entitled to injunctive relief;

(e). Whether Class Members are entitled to restitution and damages; and

(f) Whether the Defendants' conduct violated the various statutes and common law causes of action sets forth *infra* and whether Plaintiff and the Class Members are entitled to relief, and the amount and nature of such relief in the form of an injunction and /or restitution.

**Count 1**
**Violation of the CPPA**
**Implied and Express Warranties**
**Section 3904(x)**

58.   Plaintiff incorporates the allegations of paragraphs 1 through  55 as though fully set forth herein, and alleges further:

59.    As noted above, the CPPA, §28-3904, provides that is it a violation "whether or not any consumer is in fact mislead, deceived or damaged thereby,", for any person to , inter alia, "sell consumer goods in a condition or manner not consistent with state or federal law."

60.    Section 313 of the D.C. UCC (DC Code § 28:313 provides:

(1) Express warranties by the seller are created as follows:

(a)  Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and become part of the basis of the bargain creates an express warranty that the goods shall conform the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation does not create a warranty.

64.    D.C. Code § 28-314 provides:

(a) Unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section, the serving for value of food or drink to be consumers either on the premises or elsewhere is a sale.

(b) Goods to be merchantable must be at least such as . . .

( i ) In the case of fungible goods, are of fair average quality within the description; and

(ii) Are fit for the ordinary purposes for which such goods are used; and

(iii) Are adequately contained, packaged, and labeled as the agreement may require; and

(iv) Conform to the promises or affirmations of fact made on the container or label, if any.

65.    Plaintiff and DC consumers have purchased the Products from the Defendants.  The

above-referenced warranties apply to the Products.  Defendants have failed to honor these

warranties.

66.    The Products are not merchantable because they are neither fit for the ordinary purpose

for which such good are made, nor conform to the promises or affirmations covered.

67.    28:2-607 (3) (A) requires that a buyer must within a "reasonable time after he discovers

or should have discovered any breach notify the seller of breach or be barred from any remedy;"

68.    Plaintiff's counsel, on behalf of them and the DC Public, have given such notice

69.    Defendants' breaches of its Express Warranties and the Implied Warranty of

Merchantability, and its sale of consumer goods in a condition and in a manner inconsistent

with D.C. law and contrary to the operation and requirements of federal law constitute unlawful

trade practices, which violate the rights of Class Members and D.C. consumers protected by the

CPPA.  D.C. Code § 28-3904(x).

## Count 2 –
## Violations of the CPPA –
## Various subsections

70.    Plaintiff incorporate the allegations of paragraphs 1 through  55 as though fully set forth

herein, and alleges further:

71.    By marketing the Products in the manner described above, the Defendant violated the

various provisions of Section 3904 of the CPPA, set forth in more detail in paragraph 14, page 4

above.

72.     Such violations are actionable under the CPPA, and make the relief requested below

appropriate.

## Count 3

21

### Violations of the DC Commercial Code

73.      Plaintiff incorporates the allegations of paragraphs 1 through  55 as though fully set

forth herein, in particular those with respect to the DC Commercial Code, and alleges further

74.      The breaches of the DC Commercial Code as set forth above constitute an independent

cause of action, for which Class Members, on behalf of the DC General Public, seeks damages

as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, as to Counts 1-2 of the Complaint, Plaintiff, on behalf of the general public of

the District of Columbia, asks this court to award:

statutory or actual damages, trebled, except that in no case does any individual Plaintiff seek an
amount in excess of $74,000;

disgorgement of profits obtained through the sales of the Covered Products in the District of
Columbia;

attorneys' fees; and

an injunction against Defendants' violations of the CPPA; and

as to Count 3 monetary damages for monies wrongfully obtained by the Defendants from the
DC General Public

any other relief this court deems just and proper.

Respectfully Submitted

*Thomas C. Willcox*
Thomas C. Willcox, Attorney at Law
DC Bar No 445135
1701 16th Street, N.W
Suite 211
Washington DC   20009
Tel: 202.338.0818
T.C. 202.234.0892
tcw19law@gmail.com
Counsel for Kevin Fahey and the Class.



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

A KEVIN FAHEY
    Vs.                                         C.A. No.      2019 CA 001465 B
REILY FOODS COMPANY et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                       Chief Judge Robert E. Morin

Case Assigned to: Judge MICHAEL L RANKIN
Date:  March 8, 2019
Initial Conference: 10:30 am, Friday, June 07, 2019
Location:  Courtroom 517
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

                                                              CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin